*1029 TEXTO COMPLETO DE LA SENTENCIA
Comparece Tomás Hernández Santa (señor Hernández o el recurrente), y solicita la revocación de una Resolución emitida el 23 de enero de 2009 por la Sra. Gladys Rivera Correa, Supervisora de la Unidad de Clasificación de Confinados de la Administración de Corrección, que confirmó la determinación del Comité de Clasificación de la Institución de Máxima Seguridad de Ponce, de mantener al recurrente en el nivel de custodia máxima.
Por los fundamentos que pasamos a exponer, revocamos la Resolución recurrida.
I
El recurrente se encuentra confinado en la Institución Correccional de Ponce cumpliendo una sentencia de cuatrocientos veinticuatro años (424) años de reclusión por los siguientes delitos: tentativa de asesinato, violación, restricción a la libertad agravada, actos lascivos e impúdicos, sodomía, fuga, impostura, secuestro y robo, entre otros. El señor Hernández comenzó a cumplir su sentencia el 29 de junio de 1982 y cumplirá el mínimo de la pena impuesta en el año 2100.
El 28 de junio de 1999, el recurrente presentó por derecho propio y en forma pauperis una demanda contra la Administración de Corrección (Corrección) en la que alegó haber permanecido diecisiete años sin ser reclasificado a custodia mediana, a pesar de haber cumplido con los requisitos para ello; que se le había prohibido el contacto con la prensa; le habían negado los servicios de rehabilitación disponibles y que había sido sometido a maltrato y humillación continua por parte el personal de custodia. (Civil Núm. KPE99-1612). Posteriormente, la Sociedad para Asistencia Legal asumió la representación del recurrente y el 31 de enero de 2001 el caso fue sometido por el expediente.
El 26 de junio de 2001, el Comité de Clasificación de Corrección reclasificó al recurrente a custodia mediana. Como fundamento para los acuerdos tomados, el Comité especificó que el señor Hernández obtuvo su cuarto año estando en reclusión; se benefició al máximo de las terapias del NEA; ha cumplido diecinueve años y cinco meses del término de su Sentencia y ha participado en actividades fuera de la Institución; ha demostrado poseer controles suficientes para estar en una institución de menor seguridad y ha cumplido satisfactoriamente con el Plan Institucional, entre otras. (Anejo IX del Recurso de Revisión)
*1030 El 31 de octubre de 2001, a petición de Corrección, el recurrente fue trasladado a una Institución Penal en los Estados Unidos. (Anejo XIII del Recurso de Revisión). El 19 de noviembre de 2001, el señor Hernández recibió una comunicación del Sr. M. Johnson del Federal Bureau ofPrisions en Kansas, en la que se le informó que sería separado de la población regular, ello a base de información provista por Corrección. (Anejo XII del Recurso de Revisión). Para esa fecha, el recurrente ostentaba en Corrección una clasificación de custodia mediana.
El 21 de octubre de 2002, el señor Hernández presentó una queja ante el Federal Bureau of Prisions referente a la clasificación de máxima seguridad a la que fue asignado. El recurrente reclamó que al momento de ser trasladado a la prisión federal éste había sido reclasificado a custodia mediana. El 5 de noviembre de 2002, en respuesta a la queja del señor Hernández sobre el nivel de custodia asignado, el Federal Bureau of Prisons cursó comunicación a éste. Allí le informó al recurrente que siempre había ostentado una clasificación de máxima seguridad, que así lo corroboró Corrección y que además, había sido ingresado al Federal Bureau de ofPrisions a solicitud de Corrección. (Anejo XIII del Recurso de Revisión).
El 28 de enero de 2004, el TPI citó al señor Hernández y a Corrección a una Conferencia sobre el estado de los procedimientos en el caso Civil Núm. KPE99-1612. A dicha vista compareció únicamente el abogado del señor Hernández y reiteró que desde el 31 de enero de 2001 había sometido el caso por el expediente.
Inmediatamente después, el 20 de febrero de 2004, Corrección autorizó el traslado del señor Hernández al Sistema Correccional de Puerto Rico. (Anejo XVI del Recurso de Revisión). El señor Hernández fue reingresado al Sistema Correccional de Puerto Rico en el mes de marzo de 2004.
En el ínterin, mediante Sentencia emitida el 4 de marzo de 2004 en el caso Tomás Hernández Santa v. Administración de Corrección, Civil Núm. KPE99-1612, el TPI declaró con lugar la Petición de Mandamus instada por el señor Hernández y ordenó a Corrección: reclasificar en custodia mediana al aquí recurrente y concederle los servicios de rehabilitación disponibles dentro del sistema, entre otros. Concluyó el TPI que durante el tiempo que el señor Hernández ha permanecido bajo supervisión de Corrección dicha agencia le ha negado injustificadamente la reclasificación a custodia mediana y los servicios de rehabilitación disponibles. (Anejo VIII del Recurso de Revisión).
El 12 de agosto de 2004, el Comité de Clasificación evaluó al señor Hernández. Conforme a los criterios objetivos establecidos por reglamento para la evaluación de custodia, el recurrente arrojó una puntuación global de cuatro (4), la cual lo hacía acreedor a una custodia mínima. Dicha puntuación fue modificada de conformidad con los criterios discrecionales establecidos para ello y se recomendó mantener al señor Hernández en el nivel de custodia máxima, por la gravedad de los delitos, el tiempo que le falta para ser elegible a libertad bajo palabra, riesgo de evasión y pobres ajustes institucionales. Así las cosas, el Comité de Clasificación determinó ubicarlo en custodia máxima basándose además en que anteriormente, el 6 de marzo de 2003, éste había sido reclasificado en ausencia, en dicho nivel de custodia por alegadamente haber recibido varios informes disciplinarios mientras el recurrente se encontraba confinado en una prisión federal. Véase Anejo XXII de la Petición de Revisión administrativa, Pág. 36, Acuerdo del Comité de Clasificación.
El 22 de septiembre de 2005, el señor Hernández fue evaluado nuevamente por el Comité de Clasificación. El nivel de custodia arrojado por la escala conforme a los criterios objetivos allí establecidos hacían al recurrente acreedor a otro nivel de custodia. Sin embargo, el 27 de octubre de 2005, fundamentado en criterios discrecionales tales como lo extenso de su sentencia y que le faltan más de cinco años para ser elegible a Libertad bajo Palabra, el Comité ratificó su determinación de mantenerlo en custodia máxima. El recurrente apeló la decisión del Comité, la cual fue denegada el 18 de abril de 2006. Dicha denegatoria estuvo fundamentada en que el año y ocho meses que alegadamente permaneció en custodia mediana, fue objeto de varios Informes disciplinarios en una Institución Penal en Estados Unidos. (Anejo XXVIII del Recurso de *1031 Revisión).
El 17 de octubre de 2006, el Comité de Clasificación y Tratamiento emitió Resolución en la que determinó mantener al señor Hernández en custodia máxima, por estar cumpliendo el recurrente una sentencia extremadamente alta y por el poco tiempo cumplido en relación con lo extenso de su sentencia (424 años). (Anejo XXXIII del Recurso de Revisión). El señor Hernández presentó una Apelación ante Corrección en la que cuestionó los criterios discrecionales utilizados por la agencia recurrida para mantenerlo permanentemente en custodia máxima. Mediante comunicación de 30 de noviembre de 2006, Corrección denegó la misma, señalando que los criterios utilizados por el Comité para mantener al recurrente en custodia máxima continuarán siendo los mismos y reafirmó que éste deberá mantenerse el nivel de custodia máximo por lo extenso de su sentencia. Véase, pág. 74 del Apéndice del Recurso de Revisión.
El 10 de mayo de 2007, el Comité de Clasificación evaluó nuevamente al señor Hernández manteniéndolo en custodia máxima. El recurrente presentó Apelación ante la Supervisora de Clasificación de Confinados. Mediante comunicación de 12 de julio de 2007, dicha funcionaria afirmó que en efecto el recurrente estuvo varios meses en custodia mediana antes de ser trasladado a la prisión federal y clasificado allí en custodia máxima. Véase Anejo XL, pág. 107 del Apéndice del Recurso de Revisión. El 29 de noviembre de 2007, el señor Hernández interpuso Apelación ante la Supervisora del Comité de Clasificación y el 11 de enero de 2008 se le notificó a éste que su Apelación había sido denegada. Anejo XLV, págs. 139-140 del Apéndice del Recurso de Revisión.
La última evaluación realizada al señor Hernández por el Comité de Clasificación corresponde al 18 de noviembre de 2008. Allí se sostuvo la determinación de mantener al recurrente en custodia máxima. El Comité de Clasificación concluyó que “en consideración de la necesidad de observar Ajustes Institucionales de Tomás Hernández basada en la sentencia impuesta la cual es extremadamente alta (424 años), por múltiples casos de naturaleza extremos y violentos, poco tiempo cumplido en relación con el término de su sentencia, le restan 92 años para ser considerado ante la Junta de Libertad Bajo Palabra, deberá permanecer tiempo prolongado en la custodia actual proporcional a su sentencia extensa, con máximas restricciones físicas, para que se beneficie de programas y tratamientos disponibles y continuar observando buen comportamiento....”.
Así las cosas, el 4 de diciembre de 2008, el señor Hernández presentó Apelación ante la Supervisora del Comité de Clasificación. Mediante Resolución de 23 de enero de 2009, ésta confirmó la determinación del Comité de mantener al recurrente en custodia máxima por los mismos fundamentos expresados por el Comité. Anejo LUI, páginas 207-208 del Apéndice del Recurso de Revisión.
Inconforme, el recurrente presentó el recurso de epígrafe. En síntesis, el señor Hernández sostiene que Corrección evaluó y asignó su nivel de custodia de manera arbitraria y caprichosa, en violación a su debido proceso de ley. Señala, además, el recurrente, que incidió Corrección al utilizar modificaciones discrecionales para mantenerlo en custodia máxima de manera perpetua; que ello constituye un castigo cruel e inusitado, y que constituye una violación a su derecho constitucional a la rehabilitación.
Por su parte, Corrección compareció ante nos oportunamente mediante Escrito en Cumplimiento de Resolución. Señala la agencia recurrida que las alegaciones del recurrente en cuanto a la legalidad de su traslado a una cárcel federal mientras ostentaba una custodia mediana no son pertinentes al presente recurso, pero que si lo es su historial de conducta en dicha institución penal. Reitera además, Corrección, que el recurrente cumple una sentencia extensa; que incurrió en fuga y que aunque se trata de sucesos remotos ello incide en la reclasificación de su custodia. Por último, reconoce la agencia recurrida en su Escrito en Cumplimiento de Resolución que al recurrente no se le ha realizado una evaluación psicológica y que ello es necesario para la próxima evaluación de clasificación de custodia a realizarse por el Comité de Clasificación.
*1032 Examinados los escritos de las partes y sus respectivos anejos, estamos en posición de resolver.
II
La Sección 19 del Artículo VI de la Constitución del Estado Libre Asociado de Puerto Rico establece como política pública el que las instituciones penales sirvan un propósito rehabilitador del convicto. La agencia creada por ley para implantar tal política pública lo es Corrección. 4 L.P.R.A. sec. 1101 et seq. A los fines de reglamentar los asuntos relacionados con la clasificación y custodia de un confinado, Corrección aprobó el Manual de Reglas para Crear y Definir Funciones del Comité de Clasificación y Tratamiento de las Instituciones Penales, Reglamento 2485 de 29 de febrero de 1979 y el Manual de Clasificación de Confinados, Reglamento 6067 de 22 de enero de 2000.
La clasificación de los confinados, función delegada a Corrección, se rige por el Manual de Reglas para Crear y Definir Funciones del Comité de Clasificación y Tratamiento en las Instituciones Penales de 27 de febrero de 1979 (“Manual de Reglas de 1979”) y por el Manual de Clasificación de Confinados (“Manual de Clasificación o Reglamento Núm. 6067)”), de 22 de enero de 2000, aprobados conforme a las disposiciones de la Ley 116 de 22 de julio de 1974, según enmendada, 4 L.P.R.A. § 1101 et seq.
El Manual de Reglas de 1979 crea el Comité de Clasificación y Tratamiento en las Instituciones Penales y define sus funciones. Su función básica es la de evaluar al confinado en términos de sus necesidades, capacidades, intereses, limitaciones y funcionamiento social; estructurarle un plan de tratamiento el cual evaluará periódicamente para determinar si el mismo está respondiendo a las necesidades de éste y proceder con aquellos cambios necesarios para el logro de las metas rehabilitadoras y de protección social. (Regla 2). Las determinaciones del Comité deberán estar fundamentadas por hechos e información sometida a su consideración, y debe evidenciarse la necesidad de la acción que se aprueba o recomienda. (Regla 5; Regla 9(C) (3)). La jurisdicción del Comité de Clasificación incluye los cambios de custodia, (Regla 6(B)(2)(a)) y la acreditación, cancelación y restitución de bonificación (Regla 8(4)).
Una clasificación objetiva se define como un proceso confiable y válido mediante el cual se subdivide a los confinados en grupos, basándose en varias consideraciones entre las que se incluyen la severidad del delito, historial de delitos anteriores, comportamiento en instituciones, los requisitos de seguridad y supervisión y las necesidades identificables de programas y servicios específicos. Cruz v. Adm. de Corrección, 164 D.P.R. 341 (2005). El sistema consta de una clasificación inicial del confinado seguida de un proceso de reclasificación periódica de cada uno. El Comité de Clasificación y Tratamiento, creado por el Manual de Reglas de 1979, es el responsable de evaluar las necesidades de seguridad y de programas de los confinados sentenciados.
La sección 7 del Manual señala que la reevaluación de custodia no necesariamente tiene como resultado un cambio en la clasificación o la vivienda asignada. Su función primordial es supervisar la adaptación del confinado y prestarle atención a cualquier situación pertinente que pueda surgir. Agrega que es importante que los confinados con sentencias prolongadas tengan la oportunidad de obtener niveles de custodia reducida, condicionado a su cumplimiento con los requisitos de la institución. El Manual de Reglas de 1979 define los grados de custodia que tendrán las instituciones penales, a saber, máxima (Regla 10(A)), mediana (Regla 10(B)) y mínima (Regla 10(C)).
El Manual de Clasificación o Reglamento Núm. 6067, supra, considera la gravedad de los cargos y las condenas, historial de delitos graves previos, si tuvo fugas o acciones disciplinarias, edad del confinado, entre otros. El resultado aritmético de la evaluación de clasificación no obliga a una reclasificación, pues existen varios renglones de modificaciones discrecionales queda agencia puede utilizar para aumentar o reducir el nivel de custodia.
Sin embargo, la clasificación del nivel de custodia de un confinado requiere que la agencia realice un *1033 adecuado balance de intereses que nuestro Tribunal Supremo describió en el caso de Cruz v. Adm. de Corrección, supra. Por una parte, estará el interés público de lograr la rehabilitación del confinado, así como el de mantener la seguridad institucional y general del resto de la población penal; de la otra, estará el interés particular del confinado de permanecer en un determinado nivel de custodia. Id. Corrección es la agencia con obligación en ley y expertise para realizar el referido balance de intereses. La agencia considerará multiplicidad de criterios subjetivos y objetivos tales como: el carácter y actitud del confinado, el ajuste institucional, la naturaleza del delito cometido, la sentencia impuesta y el tiempo cumplido en confinamiento. Regla 10, Manual de Reglas.
Al momento de determinarse la procedencia de un cambio en el nivel de custodia, deberán considerarse una serie de factores subjetivos y objetivos. Entre los criterios subjetivos se destacan: (1) el carácter y actitud del confinado, (2) la relación entre éste y los demás confinados y el resto del personal correccional, (3) el ajuste institucional mostrado por el confinado, entre otros. Entre los criterios objetivos que tomará en cuenta la agencia para emitir su recomendación se encuentran: (1) la magnitud del delito cometido, (2) la sentencia impuesta, (3) el tiempo cumplido en confinamiento, entre otros. Véase, Regla 10 del Manual de Reglas para Crear y Definir Funciones del Comité de Clasificación y Tratamiento de las Instituciones Penales, Reglamento Núm. 2485 de 27 de febrero de 1979.
Para documentar el proceso de reclasificación del nivel de custodia de un confinado, a los factores mencionados anteriormente se les asigna una puntuación. A base del resultado que se obtenga es que Corrección recomienda el nivel de custodia que puede variar entre máxima, mediana y mínima. Entre los criterios objetivos que adopta el Manual de Clasificación de Confinados, Reglamento Núm. 6067 de 22 de enero de 2000, se encuentran: (1) la gravedad de los cargos y condenas actuales, (2) historial de delitos graves previos, (3) historial de fuga, (4) historial de acciones disciplinarias, (5) condena disciplinaria más grave, (6) condenas previas de delitos graves como adulto, (7) participación en programas, y (8) edad actual del confinado. Véase la Sección 7 del Manual de Clasificación de Confinados, supra. Si la suma de los primeros tres factores es mayor de siete, el confinado deberá ser asignado a un nivel de custodia máxima. Por el contrario, si la suma de estos ocho criterios resultara en 5 puntos o menos, el nivel de custodia indicada por la escala diseñada por la agencia recurrida, sería una menor. Id. Por otro lado, entre los criterios objetivos que tomará la agencia para emitir su recomendación se encuentran también: (1) la magnitud del delito cometido; (2) la sentencia impuesta; (3) el tiempo cumplido en confinamiento, entre otros. Regla 10 del Manual de Reglas de 1979.
Sin embargo, la escala también provee varios renglones de modificaciones discrecionales, para aumentar o disminuir el nivel de custodia arrojado por la escala, entre los cuales se encuentra: la gravedad del delito, el historial de violencia excesiva, la afiliación prominente con gangas, que el confinado sea de difícil manejo, entre otras. Id; Cruz v. Adm. de Corrección, supra. Entre los criterios subjetivos se destacan: 1) el carácter y la actitud del confinado; (2) la relación entre éste y los demás confinados y el resto del personal correccional; (3) el ajuste institucional mostrado por el confinado, entre otros. Regla 10 del Manual de Reglas de 1979, supra.
La Regla 10(A)(2) del Manual de Reglas, supra, dispone que se considerará la conveniencia de asignarle custodia máxima a un confinado cuando su historial social y delictivo, así como su conducta y funcionamiento social refleje uno o más de los indicadores que se mencionan y definen allí, tales como: (a) trastornos mentales o desajustes emocionales; (b) conflictos en el área sexual; (c) historial de fugas; (d) agresividad; (e) contrabando; (f) que se tenga información confiable sobre el confinado que pueda resultar en amenazas a la paz o tranquilidad del clima institucional, o a la seguridad del propio confinado o de otros ciudadanos de la comunidad; (g) actitud de indiferencia; (h) peligrosidad; (i) delincuentes compulsivos; (j) delincuentes habituales; (k) que el confinado ingrese por haber violado la libertad bajo palabra o libertad a prueba al resultar convicto por delitos graves; y (I) que las circunstancias del delito y sus consecuencias hayan creado una situación de tensión en la comunidad, revistiéndose el caso de notoriedad pública y la comunidad se siente *1034 amenazada con su presencia.
Por su parte, la custodia mediana se define en la Regla 10(B) como aquel grado de supervisión donde se requiere un menor uso de controles externos para con el confinado por haberse determinado, luego de un estudio ponderado del caso, que éste cuenta con aquellos controles internos o los ha internalizado durante el confinamiento, que le permiten convivir con otros confinados; participar de los programas de tratamiento y de las actividades dentro del perímetro de seguridad institucional, sin necesidad de medidas de vigilancia extremas. Se considera que a pesar del confinado tener estos controles externos no está preparado aún para realizar actividades en el exterior del penal.”
A renglón seguido, la Regla 10(B)(2) establece que se considerará la conveniencia de la custodia mediana a un confinado cuando el historial social y delictivo, así como su comportamiento reflejen mayormente los indicadores mencionados en los incisos (a) a (i) y el análisis de los mismos no se incline hacia la asignación de una custodia máxima, a saber: (a) casos que representen algún riesgo de fuga más allá del normal; (b) cuando el confinado viole su libertad bajo palabra o su libertad a prueba, resulte convicto por delitos menos graves o no cumpla con las otras condiciones impuestas; (c) cuando el confinado incurra en nuevos delitos mientras disfruta de custodia mínima; (d) cuando el confinado permanece en la institución en espera de probatoria o de libertad bajo palabra; (e) cuando un cliente sentenciado tiene casos pendientes por resolver en un tribunal; (f) cuando el confinado desobedezca las normas de la institución y/o no muestre interés en participar en los programas de tratamiento; (g) cuando el confinado observe una conducta hostil y de reto hacia la autoridad; (h) casos clasificados en custodia máxima que muestren cambios favorables en su comportamiento observable y que evidencien interés en beneficiarse de los servicios y programas a su disposición, y (i) confinados que son devueltos a la institución luego de estar ubicados en centros de tratamiento públicos o privados en la comunidad, o en los Hogares de Adaptación Social.
El aludido Manual también establece que la reclasificación es la revisión periódica de los confinados en lo que respecta a su programa como parte del Plan Institucional, así como también su categoría de custodia. El itinerario para completar la rutina de reclasificación del confinado en casos de custodia máxima es cada 6 meses después de haber cumplido el primer año de su sentencia en custodia máxima y anualmente en casos de custodia mediana o mínima. La sección 7 del Manual señala que la reevaluación de custodia no necesariamente tiene como resultado un cambio en la clasificación o la vivienda asignada. Su función primordial es supervisar la adaptación del confinado y prestarle atención a cualquier situación pertinente que pueda surgir. Agrega que es importante que los confinados con sentencias prolongadas tengan la oportunidad de obtener niveles de custodia reducida, condicionado a su cumplimiento con los requisitos de la institución. (Énfasis suplido). Según el Manual de Clasificación, supra, en los casos en que el confinado se encuentre en un nivel de custodia máxima, la evaluación periódica se hará cada seis meses desde que se cumple con el primer año en tal clasificación. Véase además, Cruz v. Adm. de Corrección, supra.
Ill
En el caso que nos ocupa es la postura de la agencia recurrida que las alegaciones del recurrente en cuanto a la ilegalidad de su traslado a una cárcel federal mientras ostentaba una custodia mediana en Puerto Rico no son pertinentes al presente recurso. Sin embargo, Corrección reitera la pertinencia del alegado historial de conducta del señor Hernández en la institución federal, cuando se le clasificó allí en custodia máxima y se le separó del resto de la población penal. Reitera además, Corrección, que el recurrente en un momento determinado incurrió en fuga y que aunque se trata de sucesos remotos, ello incide en la reclasificación de su custodia.
Del detenido examen del expediente del recurrente surge que durante sus años de confinamiento en las instituciones penales administradas por Corrección, el señor Hernández completó el cuarto año de escuela superior; desde el año 1999 no ha sido objeto de querellas administrativas internas o disciplinarias *1035 estatales; ha participado en el curso vocacional de proyectos artesanales; trabajó dentro del sistema carcelario; ha participado en actividades fuera de la Institución y no ha tenido problemas de uso de o abuso de sustancias controladas o alcohol dentro de la Institución. Debemos, además, destacar que el 26 de junio de 2001, el Comité de Clasificación de Corrección reclasifícó al recurrente a custodia mediana. Como fundamento para los acuerdos tomados en esa fecha, el Comité especificó que el señor Hernández obtuvo su cuarto año estando en reclusión; se benefició al máximo de las terapias del NEA; ha cumplido diecinueve años y cinco meses del término de su Sentencia; ha participado en actividades fuera de la Institución; ha demostrado poseer controles suficientes para estar en una institución de menor seguridad y ha cumplido satisfactoriamente con el Plan Institucional, entre otras. (Anejo IX del Recurso de Revisión)
Al examinar las evaluaciones a las que ha sido sometido el recurrente surge del expediente que en el año 2005, éste fue referido para tomar terapias sobres trastornos adictivos y del Informe surgió lo siguiente:
“El paciente sí se ha beneficiado anteriormente de terapias psicológicas dirigidas a obtener destrezas de vida para manejo de coraje, ansiedad, depresión, pensamientos positivos y rehabilitación. El paciente exhibió buena introspección, juicio adecuado y se ha mostrado receptivo al tratamiento. Al momento, el paciente presenta ajuste emocional adecuado y fue dado de alta del servicio ese mismo año.” Véase Anejo XXV del Recurso- Carta certificando buen ajuste psico-emocional, pág. 41. (Énfasis Suplido).
Destacamos que la constante en todas las instancias en las que Corrección ha determinado mantener al recurrente en custodia máxima es lo extenso de su sentencia; que éste no ha cumplido el mínimo y que le faltan más de cinco años para cualificar para Libertad Bajo Palabra. Corrección debe tener presente que el recurrente cumple el mínimo de su sentencia para el año 2100, por lo que resulta evidente que éste nunca llegará a cumplir el tiempo mínimo ni el término requerido para cualificar para obtener la libertad bajo palabra. De esta forma, Corrección ignora las evaluaciones previas realizadas al señor Hernández durante sus años de confinamiento en las instituciones penales que administra, particularmente la evaluación psicológica que se le hiciera al recurrente en el año 2005, y las recomendaciones que allí se emitieron las cuales no han sido tomadas en consideración.
Diferimos de la postura de Corrección en cuanto sostiene que las evaluaciones del Comité previas a las del año 2008 no son pertinentes a este recurso. Máxime cuando dicha agencia enfatiza continuamente en su escrito ante nos en el alegado historial de conducta del recurrente en la institución penal federal a la que fue trasladado justo después de haber sido reclasificado a custodia mediana en Puerto Rico. Para entender en el presente recurso es pertinente para este Tribunal, la totalidad del expediente administrativo del recurrente. Esto incluye las evaluaciones realizadas al señor Hernández durante sus años de confinamiento en Puerto Rico, las cuales revelan buenos ajustes institucionales.
Invariablemente, el recurrente tendrá en su récord delitos graves y lo extenso de su sentencia (424) años, lo que conllevará siempre que le queden más de cinco (5) años para ser elegible a Libertad Bajo Palabra. El alegado riesgo de evasión del recurrente al que hace referencia Corrección obedeció a que hace aproximadamente veintiún (21) años el recurrente incurrió en un intento de fuga y en cuanto a los alegados pobres ajustes institucionales, éstos ocurrieron en una prisión federal a raíz de un traslado repentino del miembro de población correccional, quien para esa fecha ostentaba una clasificación de custodia mediana en Puerto Rico.
De otra parte, coincidimos con Corrección en cuanto reconoce que al recurrente no se le ha realizado una evaluación psicológica y que ello es necesario para la próxima evaluación de clasificación de custodia a realizarse por el Comité de Clasificación. Sin embargo, somos de la opinión que la determinación impugnada por el recurrente en el presente recurso no estuvo guiada por criterios de razonabilidad, sino que se fundamenta en lo extenso de la sentencia del señor Hernández, con todas las implicaciones que ello *1036 conlleva. Tomamos además, conocimiento judicial de la Sentencia emitida contra Corrección por el TPI el 4 de marzo de 2004 en el caso Tomás Hernández Santa v. Administración de Corrección, Civil Núm. KPE99-1612. Allí, el TPI declaró con lugar la Petición de Mandamus instada por el señor Hernández y ordenó a Corrección: reclasificar en custodia mediana al aquí recurrente y concederle los servicios de rehabilitación disponibles dentro del sistema.
En atención a los anteriores señalamientos, concluimos que incidió Corrección al mantener al señor Hernández en custodia máxima, fundamentando su determinación en lo extenso de su sentencia y sin una evaluación psicológica que demuestre sus ajustes institucionales. Incidió además, la agencia, al incumplir con su deber de evaluar al recurrente cada seis meses. Al así proceder, la agencia recurrida continúa perpetuando la clasificación de custodia máxima al recurrente, mediante la aplicación arbitraria de los criterios discrecionales establecidos reglamentariamente. El señor Hernández lleva más de veinte (20) años en el mismo nivel de custodia máxima, limitándose así su oportunidad de participación en programas institucionales con fines rehabilitadores.
Reiteramos que una sentencia extremadamente alta no puede ser motivo para que no se lleve a cabo un minucioso y cabal proceso de evaluación al reclasificar a un miembro de la población correccional, por ser ésta una circunstancia que no ha de cambiar en las evaluaciones que se practiquen en el futuro.
IV
Por los fundamentos anteriormente expuestos, los cuales se hacen formar parte de esta Sentencia, se revoca la Resolución recurrida. Consecuentemente se ordena a Corrección a realizar una evaluación psicológica del recurrente dentro de los noventa (90) días calendarios siguientes a la notificación de esta Sentencia y una vez efectuada ésta, se evalúe por el Comité de Clasificación dentro del término de treinta (30) días siguientes.
Así lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.
Dimarie Alicea Lozada
Secretaria del Tribunal de Apelaciones